The STATE of Ohio, Appellee,

v.

MILLER, Appellant.

[Cite as *State v. Miller* (1991), 77 Ohio App.3d 305.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 58492.

Decided Sept. 23, 1991.

*Stephanie Tubbs Jones,* Prosecuting Attorney, for appellee.

*James R. Willis,* for appellant.

PATRICIA A. BLACKMON, Judge.

Appellant, Belinda Miller, appeals her convictions for aggravated trafficking in drugs and possession of criminal tools. The appellant assigned ten errors, which in substance address the following issues: the denial of a pre-trial motion to suppress, the denial of the pre-trial release of the appellant's money and car, the denial of a motion for judgment of acquittal, evidentiary rulings during trial, and the denial of bail pending appeal. For the reasons set forth below, we reverse.

The appellant was indicted on July 5, 1989 for possessing a controlled substance, cocaine, in an amount equal to or exceeding two times the bulk amount under R.C. 2925.03 and possession of criminal tools, including a scale, money and phone under R.C. 2923.24. The indictment allege that the appellant committed these acts on April 30, 1989.

On August 1, 1989, the appellant filed a "MOTION TO SUPPRESS AND FOR THE RETURN OF ILLEGALLY SEIZED EVIDENCE." On August 23, 1989, a hearing was held on the motion and was denied by the trial court. The appellant later filed written exceptions to the trial court's ruling.

After the motion to suppress was denied, a jury was impaneled and the trial began. At the close of the state's case, the appellant made a motion for judgment of acquittal on the charge of possession of criminal tools. The motion was denied. On August 28, 1989, the jury returned a verdict of guilty on each count of the indictment and the trial court sentenced the appellant.

On August 31, 1989, the appellant filed a motion for judgment of acquittal and for a new trial, which was denied. Following the court's denial of the request for a new trial, the appellant requested that bail be set pending appeal; the motion was denied and the appellant filed a timely notice of appeal.

At the suppression hearing, the state of Ohio presented the following evidence:

On Sunday April 30, 1989, Mary Jane Hack, a housekeeper, was assigned to clean the fifth floor at the Harley Hotel. Her assignment list included Room 502 which her list indicated was occupied. When she entered the room, it appeared to have not been used. Since she had cleaned the room on Friday, April 28, 1989, she felt confirmed in her belief that the room had not been used and was unoccupied; therefore, the housekeeping department had made a mistake.

During her inspection of the room she noticed a white powdery substance on the dresser and cleaned it off. She then checked the drawers to see if anything had been left behind. In one of the drawers she observed a large

plastic garbage bag. She opened the bag and observed a container and a plastic white jar. The container and jar contained zip-loc bags containing what she believed to be drugs. Hack left the room taking the black plastic bag and its contents with her.

She contacted her supervisor, Nancy Demko, the executive housekeeper. Demko called Assistant Manager Richard Helms for assistance; he instructed Hack to return to the room and finish her remaining assignments; she refused. Helms also instructed Demko to call the police. After the call to the police both Helms and Hack returned the plastic bag to the room; however, they removed the white jar and held it for the police.

The police arrived, and Patrolman Donald Strainer of the Independence Police Department took the jar to the police station and ran a field test on its contents. As a result of the test, he concluded that the substance was cocaine. Consequently, Patrolman Strainer contacted Detective Michael Savioli and told him that the substance was cocaine. Detective Savioli advised Patrolman Strainer to return to the hotel and take witness statements.

While Patrolman Strainer was taking the statement of Hack, another police officer accompanied Demko to Room 502. Patrolman Strainer later joined them and searched the room, believing that there might be other contraband. He found two briefcases, one brown and one black. The black case contained an electronic scale and the scale appeared to be covered with a white residue. The brown case contained a black garbage bag with a white brick which appeared to be cocaine wrapped in a Florida newspaper. It also contained little chunks of a substance, which appeared to be crack cocaine, a vehicle registration, and an old driver's license of the appellant. Both briefcases were behind the curtains.

Patrolman Strainer informed Detective Savioli of what he had found and the detective told him to put the cases back where he had found them.

Detective Savioli and Patrolman John Nicastro set up a surveillance of the hotel perimeter and the fifth floor, with several other police officers assisting. They arrested everyone who entered appellant's room, including the appellant and members of her family. The appellant was the last person to enter the room during the surveillance.

After the arrests, the appellants' vehicle was seized. It was held until the police could get a search warrant. A search warrant was obtained to search the vehicle. The search warrant affidavit stated the following: the affiant is a member of the Independence Police Department; that the information provided was from the observation of affiant and fellow police officers; that cocaine over three times the bulk amount was found in Room 502; the room was registered to Belinda Miller who had rented rooms at the hotel on several

other occasions; that Belinda Miller arrived at the hotel in the vehicle that they wished to search and used a key to enter Room 502; that hotels located close to highways, such as this one are used by drug traffickers; and affiant believes that Belinda Miller was using the hotel and her car for drug trafficking. Inside the vehicle, the police found several items which included a cellular phone, $5,318 in cash, and a pager, all of which were believed to be criminal tools.

The officers did not obtain a search warrant for Room 502. According to Detective Savioli the police officers did not feel they needed one, nor did they feel that they needed to ascertain the occupancy status of the room before they searched and seized the items described above. Nevertheless, the room was rented from April 29, 1989 through April 31, 1989, and the renter was later identified as Belinda Miller.

At the suppression hearing, Belinda Miller presented the following evidence:

Her daughters, Donna and Lisa Miller, testified about the circumstances of their arrests. Donna Miller, her brother Raymond Miller, and her boyfriend Moses Butler were arrested at approximately 3:00 p.m. as they entered Room 502. Donna Miller was detained at the Independence Police Station until after 11:00 p.m. Lisa Miller, her two-year-old brother, her five-month-old baby and two friends, Myron Norvell and Carl Greene, were arrested at approximately 7:00 p.m. as they entered Room 502.

Belinda Miller testified on her own behalf. She explained that she and her boyfriend, David Jackson Jr., rented the room in celebration of her birthday. The room was paid for two days in advance and in cash. She also indicated she did not know anything about the briefcases and they did not belong to her.

The trial court denied the motion and held: (1) the police had probable cause to detain the appellant's vehicle until they could obtain a warrant, because it was impractical to get one on the same day, a Sunday; (2) the circumstances justified the police officers in having good faith and a reasonable belief that the vehicle was used in criminal activity; (3) the information delivered to the police by hotel employees was trustworthy, delivered properly, and the police did not act improperly in that regard; (4) the police acted in good faith reliance on the search warrant; (5) the evidence recovered from the appellant's hotel room falls under the ultimate or inevitable discovery exception to the exclusionary rule; (6) exigent circumstances existed and the police officers believed a drug offense was in progress, because private citizens made the initial search; (7) the warrant was valid, and (8) the police were in compliance with the Fourth Amendment to the Constitution of the United States.

During the trial, the state presented similar evidence as at the motion hearing with one addition. Robert Michael Velten, a Chemist for the Bureau

of Criminal Identification and Investigation of the Ohio Attorney General's Office, testified that Officer Strainer's field test was not dispositive of the existence of cocaine in the white jar. Velten's test result for the substance in the white jar was negative for cocaine. However, the substance taken from the briefcase in the hotel room amounted to a total of 509.7 grams of cocaine.

At the close of the state's case, appellant made a motion for judgment of acquittal pursuant to Crim.R. 29. The motion was denied.

At the trial Belinda Miller testified that she was employed by Action Jackson Trucking and that the pager found in her car was used in the course of her employment. The cellular phone belonged to her friend, Larry Eatmon. Eatmon borrowed her car and left the phone in the car. Appellant claims that the car registration found in the briefcase was actually in her purse. She also indicated that she carried the $5,318 in her purse because she was going through bankruptcy and could not keep the money in a bank.

The trial court did not permit the testimony of Donna and Lisa Miller for the purpose of describing their arrests. The appellant took exception and proffered their testimony in the suppression hearing for purposes of appeal.

On August 28, 1989, the appellant was found guilty as charged. She was sentenced to a term of three to fifteen years and ordered to pay a mandatory fine of $5,000 on count one for aggravated trafficking. She was also sentenced to one year on count two for possession of criminal tools to run concurrent to count one. Court costs were also assessed.

The appellant made a request for bail pending appeal pursuant to Crim.R. 46. The trial court denied the motion. The trial court further stated that the amount of cocaine indicated that the appellant was apparently involved in the "drug problem" which was a danger to society.

The following assigned errors' one, two, three, and four involve substantially identical questions of law and fact, and will be discussed together:

"The court erred in denying the defendant's motion to suppress the property seized by the police from room 502.

"The court erred in ruling that the absence of a search warrant for the hotel room could be excused because the officers were acting in 'good faith'.

"The court erred and the appellant was denied due process to the extent the court credited the 'inevitable discovery' exception to the warrant requirement as a basis for validating the search made of the hotel room.

"The court erred and due process was denied when the court factored into its resolution of the motion to suppress the clearly erroneous proposition that 'when one rents a [hotel] room * * * simply to carry out some other activity it ceases to be a private dwelling or anything analogous to that.' "

For the reasons discussed below, we find that the appellant's assigned errors' one, two, three, and four are well taken.

■ The threshold question raised by the above assigned errors is whether the warrantless search of the appellant's hotel room violated the Fourth Amendment to the United States Constitution. In resolving this issue it is necessary to re-examine the evidence in relationship to the police officer's conduct in obtaining that evidence.

Patrolman Strainer was detailed to the Harley Hotel. Upon his arrival he was given the white jar by Demko who believed the white substance was cocaine. Patrolman Strainer took possession of the jar, returned to the police station, conducted his test, and returned to the Harley Hotel to obtain statements.

In the case *sub judice* this initial action by Patrolman Strainer in accepting the jar, which was removed from the appellant's room and from the black bag, was not illegal.

It is axiomatic that Mary Hack's action of removing the bag from the appellant's room was non-governmental action. Therefore, any criminal evidence received by Patrolman Strainer from the black bag is not subject to Fourth Amendment protection.

However, we do not conclude that these items gave Patrolman Strainer some heightened authority to search the appellant's room without a search warrant.

When Patrolman Strainer, the other patrolman and Demko entered the appellant's room, government action was at issue, and the appellant was entitled to Fourth Amendment protection. The Fourth Amendment protection existed regardless of the patrolman's ill placed belief in Hack's speculation that the room was unused and therefore vacant.

Before Patrolman Strainer entered the room he was aware that the room was once occupied. The only evidence of its non-occupancy was the speculative mistaken belief of the housekeeper Mary Hack. The reality is that the Patrolman Strainer did not inquire of the hotel manager the status of the hotel room; although, the hotel manager would have been the best person to know the rental status of the room. Nonetheless, the police believed that they did not have to ascertain the rental status because Mary Hack said it was vacant and that was sufficient for them. This conclusion by the police in this case totally avoided the distinction between vacant and unrented. The trial court agreed that they did not need a search warrant and could rely on Hack.

The court further reasoned that the items taken from the appellant's room during the warrantless search were seized under the ultimate or inevitable

discovery exception to the warrant requirement, which was recognized as an exception in the case *Nix v. Williams* (1984), 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377. Although the trial court thought this rule applied, it does not.

We also conclude that the good-faith-belief standard does not apply to the warrantless search and never has applied under present or past Supreme Court rulings. The trial court believed that the patrolman reasonably relied on the housekeeper's belief that the room was vacant. Such reasoning is unacceptable since the officers should have ascertained the rental status from the hotel managers. Surely, they would have known if the room was vacant. For us to conclude otherwise would be to accept the position that the housekeeper's beliefs vitiates an officer's duty and responsibility to inquire about the status of the room from a management authority who would be in a position to know. The avoidance of a fact does not equal the non-existence of the fact, this is especially true when those facts are facially obvious.

We are, however, mindful that the drug problem in this country has propelled us into a crisis. Nonetheless, we are required by law to respond rationally in times of crisis; hopefully, by doing so, we retain the integrity of the Constitution, which is designed at least in part, to insure that the rights of the people are not lost, misplaced, avoided, or destroyed in times of crisis.

■ Therefore, we find that a person's hotel room, like a person's home, must be free of warrantless intrusions; any lesser standard is presumptively unreasonable. *Middleburg Hts. v. Theiss* (1985), 28 Ohio App.3d 1, 3, 28 OBR 9, 11–12, 501 N.E.2d 1226, 1228–1229, citing *Payton v. New York* (1980), 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639. *Johnson v. United States* (1948), 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436. However, the trial court thought the inevitable discovery rule applied and the appellee believes that the appellant abandoned the room giving Demko the right to consent to the search of the room. We find neither concept applicable. It is our position that Demko could not consent to the search of the appellant's room.

■ It is true that a hotel employee may enter a room in performance of its duties, but they cannot *per se* authorize or give consent to a police search of that room. *Stoner v. California* (1964), 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856. (Emphasis added.) A consent to search is not derived from the hotel's authority; it must be based on a belief that the occupant or renter authorized the hotel employee to give consent. *Id.* at 489, 84 S.Ct. at 893, 11 L.Ed.2d at 860–861.

■ Additionally, consent by the hotel management is lawful when the guests surrenders or no longer rents the room. A hotel guest automatically relinquishes his room at check-out time, when he has not paid for another

night and the key has been returned to the hotel management. *United States v. Savage* (C.A.5, 1977), 564 F.2d 728, 733.

■ A consent to search given by the hotel management is also lawful if a hotel room has been abandoned. *Abel v. United States* (1960), 362 U.S. 217, 80 S.Ct. 683, 4 L.Ed.2d 668. The appellee argues that this is what occurred in the case *sub judice.* We do not agree because the appellant had not relinquished her expectation of privacy. "The test for abandonment is whether the complaining party retains a reasonable expectation of privacy in the premises." *E.g., United States v. Akin* (C.A.7, 1977), 562 F.2d 459, 464 (where hotel room was wide open and toilet items were left after check-out time; the room was abandoned for Fourth Amendment purposes). Therefore, abandonment is a question of law and fact which must be determined by looking to the acts and intent of a person who allegedly abandoned property. *Id.* See also, *Friedman v. United States* (C.A.8, 1965), 347 F.2d 697.

The United States Court of Appeals, the Sixth Circuit, made the following distinction between what constitutes a legitimate expectation of privacy and what does not:

"In this connection, * * * the 'checked luggage' cases are instructive. One such case is *United States v. Sanders,* 719 F.2d 882 (6th Cir.1983), where a suitcase containing cocaine and marijuana had been checked through on the ticket of an airline passenger flying north from Florida. Believing that she was under surveillance, the passenger left the airport at her destination without retrieving her suitcase from the baggage claim area. When questioned by law enforcement officials, she said that she had not claimed the suitcase because she was not going straight home. She refused to consent to a search of the suitcase, thus actively indicating an interest in keeping the contents private. Under these circumstances, this court held that there had been no abandonment.

"The other side of this coin is represented by *United States v. Tolbert,* 692 F.2d 1041 (6th Cir.1982), where the actions of another airline passenger who had checked a cocaine-laden suitcase on a flight from Florida were held to have manifested no expectation of privacy. The defendant in *Tolbert* not only passed through the baggage claim area without picking up her luggage, but, when questioned by the authorities, she denied having any luggage. Concluding that Tolbert had not exhibited the necessary expectation of privacy in the suitcase, this court held it was error to suppress the evidence discovered in a warrantless search of the suitcase. The suitcase having been abandoned, Tolbert's Fourth Amendment rights were not violated by the search." *United States v. Oswald* (C.A.6, 1986), 783 F.2d 663, 666 (no expectation of privacy to cocaine in the trunk of a car when left to burn).

It is clear that the degree of expectation of privacy depends not only on the type of property, but the location of the property and what that location means to the person with the expectation. See, *Oswald, supra,* at 666–667.

The action by Patrolman Strainer resulted in a failure on his part to determine whether the appellant had an expectation of privacy in Room 502. A simple check with the hotel records or management to see if the room was rented would have alerted the police that the appellant had an expectation of privacy. This kind of police inquiry could have resulted in the officer establishing surveillance pending further investigation and the attainment of a search warrant. *Segura v. United States* (1984), 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (where police officers seized apartment and occupant for nineteen hours, while others obtained a search warrant). See, also, *Middleburg Heights v. Theiss, supra.* Nevertheless, the trial court urged that we overlook this warrant requirement because the appellant did have possession of the room and a large sum of cocaine was found in the room. We can not agree with this reasoning, to do so would be to void the Fourth Amendment.

■ Thus, we conclude that the state did not establish that the appellant abandoned her expectation of privacy. It is her intent that is crucial to the resolution of this matter. See *Friedman, supra.* In *Sanders,* an airline passenger seemingly abandoned her suitcase when she left it in a baggage claim, but she explained that she did not pick it up because she was not going straight home. In the instant case, appellant seemingly abandoned her room when she failed to sleep there the night of Saturday, April 29, 1989, but she explained that she did not use it that night because she could not find a baby-sitter and she intended to use it Sunday night and allow her children to use it to go swimming during the day. In this case, like in *Sanders,* there was no abandonment.

In any event there is a question raised as to whether there existed a good faith belief by the police that the hotel employee could give consent. Although *Stoner* established that a hotel employee has no authority of his own to authorize the search of a guest's room, recently the Supreme Court held that there is a good faith exception to the requirement of actual consent. This exception has been held to apply to third parties not hotel employees. *Illinois v. Rodriguez* (1990), 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148. A good faith exception exists under the Supreme Court's objective standard:

" ' * * * would the facts available to the officer at the moment ... "warrant a man of reasonable caution in the belief" ' that the consenting party had authority over the premises? *Terry v. Ohio,* 392 U.S. 1, 21–22 [88 S.Ct. 1868, 1879–1881, 20 L.Ed.2d 889, 905–907]. If not, then warrantless entry without

further inquiry is unlawful unless authority actually exists. But if so, the search is valid." *Id.*, 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161.

In *Rodriguez,* the court reasoned that *Stoner* should be interpreted as standing for the proposition

" * * * that the police could not rely upon the obtained consent because they knew it came from a hotel clerk, knew that the room was rented and exclusively occupied by the defendant, and could not reasonably have believed that the former had general access to or control over the latter." *Id.,* 497 U.S. at 188, 110 S.Ct. at 2801, 111 L.Ed.2d at 160.

This reasoning by the Supreme Court clearly evidences an intent that *Stoner* remain the law. Therefore, the *Rodriguez* case does not apply to these facts because the consenting party was a roommate, a third party who possessed an apparent authority to consent to the search. She had a key, the police observed her enter the room, and they had received information from her concerning a crime of violence. From the facts of *Rodriguez,* the police returned to the apartment not to look for contraband but to arrest a person who was believed to have committed a crime of violence. Upon entering the apartment the police observed the cocaine in plain view. Under this factual scenario the police acted in good faith in believing that there was a consent to enter and they observed the drugs in plain view. The conduct of the police was lawful. Additionally, we must never confuse good faith standing alone as a basis for justifying a warrantless search and good faith as an objective underlying basis to support one of the recognized exceptions to the Fourth Amendment warrant requirement.

Therefore, we conclude that the case *sub judice* is the same as *Stoner.* The consent was given by the hotel employee who without basis concluded that it was not used and therefore, vacant. The fact that the police officers did not know whether the room was rented is a distinction without a difference, because they could have and should have ascertained the rental status. They had the full cooperation of the hotel's management. The police could have asked prior to entering Room 502, since the status of Room 502 was a fact "available to the officer," under the *Rodriguez* standard, but the officer chose not to investigate and discover this fact. Accordingly, the " * * * warrantless entry without further inquiry * * * " is unlawful. *Id.,* 497 U.S. at 188–89, 110 S.Ct. at 2801, 111 L.Ed.2d at 161. Thus, we are now faced with whether the court's inevitable discovery exception applies. We conclude that it does not.

■ The Ohio Supreme Court adopted the ultimate inevitable discovery exception to the Exclusionary Rule so that illegally obtained evidence could be admitted after it was established by a preponderance of the evidence that it "would have been discovered by lawful means." *State v. Perkins* (1985), 18

Ohio St.3d 193, 195, 196, 18 OBR 259, 260–261, 261–262, 480 N.E.2d 763, 765, 766 citing *Nix v. Williams, supra.*

In the case, *sub judice,* the appellee presented no evidence that the items taken from the appellant's room would have been discovered through a lawful means and independent of the unlawful conduct of the police. Detective Savioli testified that they did not get a warrant, because they did not feel they needed one. If Detective Savioli had testified that they were attempting to get a warrant independent of Officer Strainer's search, the exception might apply. Nonetheless, on the facts before this court, it does not. The rationale of the inevitable discovery rule is *not* to place the police in a better position than they would have been in if no illegality had transpired. *Nix v. Williams, supra.*

To allow the items seized from the appellant's room to be introduced under this exception would do violence to the Constitution and place the police in a better position by unlawful means.

Finally, we turn to the concern that the hotel room was used by the appellant for a non-intended purpose.

This court has recognized that there is no expectation of privacy where a place is used for a reason other than its intended purpose. *State v. Hunter* (1988), 48 Ohio App.3d 170, 548 N.E.2d 1321 (where concert-goers used toilet stall as hiding place for illegal drug activity). However, this standard applies to a public place that is temporarily private due to a reasonable expectation and the manner in which it is used. *Katz v. United States* (1967), 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, cited in, *State v. Tanner* (1988), 42 Ohio App.3d 196, 537 N.E.2d 702 (where concert goers used toilet stalls as hiding a place for illegal drug activity). In the instant case, there is no evidence that the hotel room was used for anything other than a private dwelling.

In conclusion we find that the warrantless search of the appellant's apartment violated the Fourth Amendment and does not fall within any recognized exception to the exclusionary rule. Therefore, the exclusionary rule applies to the evidence seized from the appellant's car which was derived from the illegal search of the appellant's room and was the basis for the search warrant. *Silverthorne Lumber Co. v. United States* (1920), 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319. Consequently, we find the appellants following assignments of error, five and six, well taken:

"Given the fact that the warrantless seizure of the appellant's car and its illegal detention were both without probable cause; hence, were illegal, the court erred in refusing to suppress all evidence acquired in the wake thereof and in refusing to order the return of the illegally seized property.

"The court erred in ruling that the affidavit for search warrant set forth the requisite probable cause justifying a search of the defendant's car and in further ruling that in any event the officers acted in a good reliance on the search warrant."

The information which formed the basis for the probable cause for the detention of the appellant's car and the obtaining of the search warrant was obtained from the illegal search of the appellant's hotel room; therefore, the evidence was the fruit of a poisonous tree and must be suppressed. See, *e.g.,* *Silverthorne Lumber Co., supra.*

Because of our ruling regarding the illegally seized evidence we find the following assignment of error, seven, to be well taken:

"The court erred in failing to order the return of certain property seized incident to the search warrant since there was a complete absence of any basis for the state's retention of this property for any reason."

Any property that has been " * * * seized pursuant to a search warrant, or otherwise lawfully seized * * * that is in the custody of a law enforcement agency, shall be kept safely pending the time it no longer is needed as evidence * * * " R.C. 2933.41(A)(1). Once it is no longer needed as evidence, then and only then must it be returned to the owner "at the earliest possible time." R.C. 2933.41(B).

In the case *sub judice* the trial court failed to rule on the motion for the return of the car and the money. Once the court suppresses the evidence, it is no longer needed as evidence and must be disposed or returned pursuant to R.C. 2933.41.

The following assignments of error eight and nine will be discussed jointly because they raise evidentiary questions of law and fact:

"The court erred in denying the appellant's motion for judgment of acquittal (made under favor of Rule 29[C], *Ohio Rules of Criminal Procedure*) with reference to count II, the criminal tools charge, since the evidence is insufficient to support a finding of guilt beyond a reasonable doubt.

"The trial court erred (a) in barring defense counsel from making critical facts in his opening statement that bore directly on the defense put forth; (b) in restricting cross examination of various police officers concerning their illegal arrest and detention of the accused's various children and certain friends; (c) from presenting evidence showing numerous other illegal acts committed by the police, and (d) from making certain critical points during summation."

Because we find that this case should be reversed and the evidence returned, it is unnecessary to determine whether the motion for a judgment of

acquittal should have been granted on the criminal tools. The same reasoning is true on the issue of barring certain evidence.

Therefore, we find that the appellants' assignments of error eight and nine are moot.

Appellant's tenth and final assignment of error states:

"The trial court and this court, either, abused its discretion or failed to exercise its discretion (which translates into a due process violation), when the appellant's application for bail pending appeal was summarily denied. Arguably this was done for reasons other than those set forth in the rules under which the applications were made."

The Supreme Court of Ohio, held in *Christopher v. McFaul* (1985), 18 Ohio St.3d 233, 234, 18 OBR 291, 292, 480 N.E.2d 484, 484, that:

" ' * * * [t]he release of an accused on bail after conviction and pending appeal is not a matter of right but a question to be resolved by an exercise of the sound discretion of the court. Only if there is a patent abuse of such discretion should the decision of the court denying bail be disturbed.' "

▪ In the instant case, the appellant has failed to demonstrate any abuse of discretion on the part of the trial court in the denial of bail pending appeal. The record reveals that the trial court's denial of bail was based on its concern over the "drug problem" and a belief that the appellant contributes to the drug problem which endangers our country. Clearly, appellant was detained because of the risk of danger she posed dealing drugs. See Crim.R. 46(E). Therefore, appellant's tenth assignment of error is not well taken.

*Judgment reversed.*

PATTON, P.J., concurs.

SPELLACY, J., concurs in judgment only.