OPINION
{¶ 1} Robert Glover pled no contest to one count of possession of crack cocaine, a felony of the first degree, and to one count of possession of cocaine, a felony of the third degree, after the Montgomery County Court of Common Pleas overruled his motion to suppress evidence. The court found him guilty and sentenced him to three years of incarceration on each count, to be served concurrently. Glover raises one assignment of error on appeal.
 {¶ 2} "THE TRIAL COURT ERRED IN DETERMINING THAT APPELLANT LACKED STANDING TO MOVE TO SUPPRESS EVIDENCE."
 {¶ 3} In his sole assignment of error, Glover challenges the trial court's denial of his motion to suppress on the ground that he lacked a legitimate expectation of privacy in the apartment that was searched.
 {¶ 4} Glover provided the sole testimony during the hearing on his motion to suppress. According to his testimony, 409 South Jersey Street in Dayton, Ohio, was leased by Steve Lynch, an individual who Glover knew "through another friend." Glover had been to Lynch's residence about fifteen to twenty times over a four week period. He went there to play video games, drink beer and "have a girl over" to have sex. He also smoked drugs with his friends. If Glover went to the apartment to drink beer, he would stay for most of the evening. If he went to the apartment to have sex, he would stay until approximately 5:00 a.m. or 6:00 a.m. Glover testified that Lynch slept in his own bedroom; Glover would "pass out on the couch or either pass out on the floor." Glover further testified that he did not cook dinner at 409 South Jersey, but would bring food into the apartment to eat or snack. Glover did not keep any clothes or toiletries at the apartment. He testified that he showered at the apartment after he had had sex so that his girlfriend would not know that he had been with another woman. Glover admitted that 409 South Jersey "was a place to go to party" and that its was "not [his] place to answer the door" if someone knocked. Glover indicated that he resided at 117 West Parkway with his girlfriend, Stephanie Gillespie, who was his "baby's mama." Glover did not go to 409 South Jersey with Gillespie.
 {¶ 5} On April 1, 2003, Glover was in the bathroom at 409 South Jersey when the police entered the residence without a warrant. Upon seeing the police, another individual visiting the apartment also entered the bathroom. When Glover subsequently exited, an officer ordered Glover to get down on the floor. Glover complied. Glover denied having had a bag of crack in his hand and throwing it onto the floor. Glover also testified that the bag of crack that was found by the officer was located after the officers had looked through some boxes in the corner.
 {¶ 6} After hearing Glover's testimony, the trial court orally ruled that Glover lacked a legitimate expectation of privacy in the apartment generally and in the specific area where the drugs were found. After initially noting that Glover did not lease the apartment, the court reasoned: "In this situation, we have the party going on in both rooms, it sounds like, and in full view of everyone, because people like to watch. And it doesn't sound like there was much of an expectation of privacy. * * * I don't think society is prepared to recognize an expectation of privacy in a party house or a drug house or crack house or whatever somebody might call this particular kind of house where this kind of thing occurred." The court commented that Glover's failure to keep clothing at 409 South Jersey and the fact that he returned home after the effects of his activities had worn off indicated that the apartment "[was] not [his] private place." The court further stated "it doesn't sound like there was much of an expectation of privacy even with a woman involved," considering that sexual activities often occurred in front of other individuals at the apartment.
 {¶ 7} With regard to the area of the apartment where the drugs were found, the court stated: "The drugs * * * came from some boxes that were on the floor. Those boxes weren't described sufficiently to meet the burden of proof I believe that would — would by a preponderance of the evidence that would reflect any subjective expectation of privacy in that area of the home or in those particular boxes where he says the drugs were."
 {¶ 8} In reviewing the trial court's ruling on a motion to suppress evidence, this court must accept the findings of fact made by the trial court if they are supported by competent, credible evidence. See Statev. Morgan, Montgomery App. No. 18985, 2002-Ohio-268. However, "the reviewing court must independently determine, as a matter of law, whether the facts meet the appropriate legal standard." Id.
 {¶ 9} The Fourth Amendment to the United States Constitution and Section 14, Article I of the Ohio Constitution secure an individual's right to be free from unreasonable searches and seizures. Warrantless entry by law enforcement personnel into premises in which an individual has a reasonable expectation of privacy is per se unreasonable, unless it falls within a recognized exception to the warrant requirement. Minnesotav. Olson (1990), 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85; State v.Miller (1991), 77 Ohio App.3d 305, 602 N.E.2d 296. A criminal defendant is not required to have an ownership or possessory interest in premises in order to complain of a Fourth Amendment violation with respect to a law enforcement officer's entry into those premises. State v. Moore,
Montgomery App. No. 20198, 2004-Ohio-3783, ¶ 10. However, Fourth
Amendment rights are personal rights which may not be asserted vicariously by third parties. Rakas v. Illinois (1978), 439 U.S. 128,133-34, 99 S.Ct. 421, 58 L. Ed.2d 387; State v. Caldwell (Feb. 26, 1999), Montgomery App. No. 17175. Thus, in order to challenge a search as violative of the Fourth Amendment, a defendant must demonstrate (1) that he personally had an expectation of privacy in the place searched and (2) that his expectation was reasonable. Minnesota v. Carter (1998),525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373; State v. Williams (1995),73 Ohio St.3d 153, 166, 652 N.E.2d 721. A defendant has a legitimate expectation of privacy only if it is "one that society is prepared to recognize as `reasonable.'" Olson, 495 U.S. at 95-96 (citations omitted); State v. Little, Montgomery App. No. 19976, 2004-Ohio-1814, ¶ 9.
 {¶ 10} The Supreme Court has recognized that an individual's status as an overnight guest is sufficient to show that he or she had an expectation of privacy that the Fourth Amendment protects. Olson, supra. In Olson, the Court explained:
 {¶ 11} "To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the every day expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. * * *
 {¶ 12} "From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend." Id. at 98-99.
 {¶ 13} Subsequent to Olson, however, the Supreme Court made clear that "one who is merely present with the consent of the householder" does not enjoy the same status as an overnight guest and may not claim the protection of the Fourth Amendment. Carter, supra.
 {¶ 14} In the present case, it is apparent that Glover was not an overnight guest at 409 South Jersey. Glover indicated that he resided with his girlfriend on West Parkway and that his clothes and toiletries were not kept at the South Jersey address. Glover acknowledged that 409 South Jersey "was a place to go to party," i.e., a place to play video games, snack, drink beer, do drugs, and have sex. Although Glover may have stayed at Lynch's apartment during the overnight hours, he clearly was not there to seek shelter and privacy for himself and his possessions, as contemplated in Olson. Rather, Glover's testimony demonstrates that he was present at 409 South Jersey, with the consent of the leaseholder, merely to engage in "party" activities with his friends. The fact that he may have "passed out" on the floor or couch following these activities does not change his status to an overnight guest. Thus, the trial court properly concluded that Glover lacked a legitimate expectation of privacy in Lynch's apartment at 409 South Jersey and, consequently, that Glover could not claim the protection of the Fourth Amendment with regard to the search of that apartment. Accordingly, the trial court properly overruled Glover's motion to suppress the drugs seized as a result of the warrantless search of the apartment.
 {¶ 15} The assignment of error is overruled.
 {¶ 16} The judgment of the trial court will be affirmed.
Brogan, P.J. and Fain, J., concur.
(Hon. Frederick N. Young sitting by assignment of the Chief Justice of the Supreme Court of Ohio).