DECISION AND JUDGMENT ENTRY
Defendant-Appellant Jack Charles Nicole, III, appeals his conviction for trafficking in drugs in violation of R.C. 2925.03(A), a second-degree felony, in the Athens County Court of Common Pleas. Appellant argues that the discovery of nine hundred unit doses of Lysergic Acid Diethylamide (LSD) gel capsules in his motel room was the result of an illegal search by the Athens police. Appellant, therefore, claims error, arguing that the trial court should have suppressed this evidence as the fruit of an illegal search. We disagree and affirm the judgment of the trial court.
STATEMENT OF THE CASE AND FACTS
On February 1, 1999, Peoria, Illinois, police officers arrested a suspect who had in his possession some twenty-two doses of Lysergic Acid Diethylamide (LSD).[1] That suspect thereafter agreed to become a confidential informant (the informant) for the Peoria City Police Department (PCPD). The informant advised PCPD officers that his LSD supplier was named Jack and lived in Athens, Ohio. The person described by the informant was later identified to be appellant.
The informant reported that appellant had been supplying him with substantial quantities of LSD since the summer of 1998. The informant also indicated that the quantity normally purchased was one thousand unit doses of LSD. These transactions usually took place at appellant's residence, located at Sixteen Walker Street in Athens, Ohio (the Walker address). The Athens City Police Department (ACPD) verified that the telephone number supplied by the informant was listed in appellant's name and corresponded to the Walker address.
The PCPD and ACPD undertook a joint investigation into the reported drug-trafficking operation in Athens. At the direction of the PCPD, the informant made several telephone calls to appellant to negotiate the purchase of a quantity of LSD. When the informant told appellant that he would be in Athens on February 12, 1999, appellant directed him to call for further instructions after the informant arrived in Athens. PCPD officers, Detective-Sergeant Mike Scaly and Detective Jerry Bainter, brought the informant to Athens for the meeting.
Undercover Agent Lee Hawks of the Athens/Meigs County Major Crimes Task Force posed as the informant's associate. The ACPD supplied Agent Hawks with $2,100 in cash; the serial number for each bill being recorded for identification purposes. Additionally, Agent Hawks was equipped with a concealed radio transmitter so that discreet communication would be possible from Agent Hawks.
On February 12, 1999, Agent Hawks and the informant checked into a motel room on the east side of Athens where they planned to complete the LSD purchase from appellant. However, appellant directed them to meet him that evening in Room Seventeen of the Highlander Motel (Room Seventeen), on the west side of Athens, near the Walker address.
Agent Hawks and the informant met appellant in Room Seventeen that evening at approximately 8:30 p.m. Appellant had nothing more than a backpack with him. After counting the money brought by Agent Hawks, appellant told the pair that he did not have the LSD with him. Rather, he explained that he had to retrieve the drugs from another location — presumably the Walker address. After a brief argument regarding this procedure, Agent Hawks agreed to appellant's terms. Accordingly, appellant departed with the $2,100 and his backpack at about 8:50 p.m., leaving the key to Room Seventeen on a table in the room. Agent Hawks then used a predetermined code word to call for the officers monitoring him to move in and arrest appellant.
The Highlander Motel is located on the north side of West Union Street in Athens. Stationed in an unmarked police car behind the motel were ACPD Lieutenant Ron Crabtree, Detective Scaly, Detective Bainter, and Special Agent Dennis Lowe of the Ohio Bureau of Criminal Investigation. These officers could not see Room Seventeen, but were monitoring the activities inside by means of the concealed transmitter worn by Agent Hawks. ACPD Lieutenant Williams and ACPD Investigator Jeff Gura were nearby in another unmarked police car; they were parked on West Union Street opposite the motel, behind an optometrist's office. From where they were parked, they could just see the door to Room Seventeen.
When alerted by Agent Hawks to move in, Agent Lowe and Detective Scaly left Lieutenant Crabtree's car parked behind the motel and began to search for appellant. Lieutenant Crabtree remained in the car with Detective Bainter. Agent Hawks remained in the hotel room with the informant, awaiting the arrival of uniformed police officers to take custody of the informant. Meanwhile, the arrival of a marked police car blocked Lieutenant Williams' exit from his parking place behind the optometrist's office.
At Room Seventeen, uniformed ACPD officers Halley and Scotts arrived to take charge of the informant, thereby freeing Agent Hawks to join the search for appellant. The other ACPD officers had moved their vehicle, thereby allowing Lieutenant Williams to pull his vehicle onto Blick Avenue, which separated the optometrist's office from the Highlander Motel property. Blick Avenue is a short, dead-end street off West Union Street, which provides access to the parking lot of the motel by means of a driveway. Investigator Gura then spotted a man with a backpack walking out onto Blick Avenue from this driveway. When Investigator Gura called to the man, he ran away. Agent Lowe, Agent Hawks, Detective Scaly, and Investigator Gura all joined in a foot chase of the man, identified by Agent Hawks as their suspect. Appellant ran north, in the direction of West State Street, and was briefly lost from sight in the darkness.
While West State Street runs parallel to West Union Street, there are no direct road connections between these two streets near the Highlander Motel. The Athens Water Plant and an equipment depot for American Electric Power separate the two streets. Therefore, to reach the nearest cross street, Lieutenant Crabtree and Detective Bainter had to drive approximately a mile east along West Union Street, then return to the western end of West State Street.
After a few minutes, Agent Lowe and Detective Scaly lost appellant's trail, gave up the chase, and returned to the motel room. Agent Hawks and Investigator Gura, however, again spied appellant. Appellant, who by that time had a lead of a few steps on his pursuers, scaled the fence into the Athens Water Plant and lost his pursuers once again. Eventually, appellant concealed himself under a trailer at the Ohio University golf-driving range, near the western end of West State Street. Agent Hawks and Investigator Gura were able to follow appellant's footprints in the snow for a few feet, but then lost his trail. However, with the assistance of the ACPD K-9 unit, appellant's hiding place was soon discovered, culminating in his apprehension and arrest at about 9:00 p.m., some ten minutes after appellant had departed Room Seventeen.
Lieutenant Crabtree arrived at the scene of the arrest and reclaimed the marked money from the suspect. Shortly thereafter, Agent Hawks and Investigator Gura arrived at the scene of the arrest and Agent Hawks identified the man captured by the K-9 unit as Jack, appellant in the case sub judice. Since appellant no longer had his backpack, Agent Hawks and Investigator Gura retraced their steps in an effort to locate it, while Lieutenant Crabtree returned to the Highlander Motel with Detective Bainter.
Agent Hawks and Investigator Gura retrieved the backpack one street east of Blick Avenue and returned to Lieutenant Crabtree's car, now parked on Blick Avenue. Lieutenant Crabtree photographed the backpack and placed it in his car. Lieutenant Crabtree then directed Investigator Gura to return to the police department to begin preparation of the documents needed to acquire search warrants for both Room Seventeen and the Walker address. However, Agent Hawks discovered that he had lost his car keys in the chase. Agent Hawks and Investigator Gura took approximately twenty minutes to find Agent Hawks' keys. Lieutenant Williams drove Investigator Gura downtown, while Agent Hawks returned to Room Seventeen. It was then about 10:00 p.m.
While Agent Hawks and Investigator Gura searched for Agent Hawks' keys, Lieutenant Crabtree returned to Room Seventeen. Detective Scaly, Detective Bainter, the informant (now secured with handcuffs), Agent Lowe, and a number of other officers were in Room Seventeen when Lieutenant Crabtree returned. While standing in the doorway of Room Seventeen, Lieutenant Crabtree reported the apprehension of appellant, the recovery of the money and the backpack. As he was viewing Room Seventeen, Lieutenant Crabtree remarked that he had searched this room several years before as part of another drug case. He also stated that in that search he had found a bag of marijuana concealed in the hollow base of a table lamp. Detective Bainter picked up a large ceramic lamp on a credenza to reveal nine hundred unit doses of LSD gel capsules, commonly referred to as a "book" of LSD, stuffed into the base of the lamp. Detective Bainter replaced the lamp on the credenza with the book of LSD still located in the base. Lieutenant Crabtree, Agent Lowe, and Detective Bainter then drove downtown to ACPD headquarters in Lieutenant Crabtree's car, to assist Investigator Gura in the preparation of the search-warrant applications and attendant documents.
When Agent Hawks returned to Room Seventeen he found the informant, Detective Scaly, and ACPD Patrolman Ron Brooks. Detective Scaly reported the discovery of the book of LSD. Agent Hawks remained in the room to await the return of Investigator Gura with a search warrant. At 12:50 a.m., on February 13, 1999, Investigator Gura returned with the search warrant for the motel room. Agent Hawks then recovered the LSD from the base of the lamp. The officers found nothing else of consequence in the search of Room Seventeen.
Lieutenant Crabtree and Agent Lowe did not return to Room Seventeen that night as they had received the second search warrant for the Walker address and had executed that search. On February 22, 1999, an Athens County Grand Jury returned an indictment against appellant charging him with one count of trafficking in LSD, in violation of R.C. 2925.03(A), a second-degree felony.
Appellant moved to suppress the LSD seized from Room Seventeen. At the suppression hearing held on April 7, 1999, appellant argued that the police had stated in their affidavit in support of the application for the search warrant for Room Seventeen, that they believed appellant kept his drugs at the Walker address. Therefore, appellant argued that the police lacked probable cause to search the motel room for contraband. The trial court denied appellant's motion.
Shortly thereafter, the state became aware that the police had discovered the book of LSD under the table lamp prior to obtaining a search warrant for the premises. The state appropriately disclosed its discovery of this information to appellant's counsel. Appellant then filed a supplemental motion to suppress the evidence, arguing that the trial court should not allow the LSD into evidence as it was the product of a warrantless, illegal search.
At the hearing of this supplemental motion, Agents Hawks and Lowe, Lieutenant Crabtree, and Investigator Gura testified. The trial court once again denied appellant's motion to suppress the evidence. The court found that Investigator Gura, who had prepared the affidavit in support of the search-warrant application for Room Seventeen of the Highlander Motel, was unaware of the discovery of the book of LSD under the table lamp prior to the filing of his affidavit in support of the search warrant application. The trial court concluded that the discovery of the book of LSD would have been inevitable once Investigator Gura returned to execute the search warrant for the motel room. Therefore, the trial court denied appellant's supplemental motion to suppress.
Appellant entered a no-contest plea to the sole charge of the indictment. The trial court sentenced him to two years in prison and fined him $7,500. Appellant now appeals this conviction and sentence raising two assignments of error for our consideration.
 I. THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO SUPPRESS.
 II. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S SUPPLEMENTAL MOTION TO SUPPRESS.
ANALYSIS
We address each of appellant's assignments of error seriatim.
 I.
Appellant, in his First Assignment of Error, argues that the Athens police failed to establish probable cause for the issuance of the search warrant for Room Seventeen. The Eighth District Court of Appeals has ruled that "a person's hotel room, like a person's home, must be free of warrantless intrusions; any lesser standard is presumptively unreasonable." State v. Miller (1991), 77 Ohio App.3d 305, 312,602 N.E.2d 296, 301, citing Middleburg Hts. v. Theiss (1985),28 Ohio App.3d 1, 3, 501 N.E.2d 1226, 1228-1229; see, also, Payton v. NewYork (1980), 445 U.S. 573, 100 S.Ct. 1371; Johnson v. United States
(1948), 333 U.S. 10, 68 S.Ct. 367.
At the hearing on appellant's supplemental motion to suppress, the state argued that appellant had abandoned his motel room by virtue of his flight shortly after the conclusion of negotiations for the purchase of the LSD. Therefore, the state argued, appellant no longer had any expectation of privacy in Room Seventeen.
Appellant argues that the state must establish some voluntary act relinquishing control of a motel room in order to constitute an abandonment. Appellant cites Miller, supra; State v. Preston (July 1, 1993), Cuyahoga App. No. 62982, unreported; State v. Edwards (June 2, 1997), Stark App. No. 1996 CA 224, unreported.
A hotel guest automatically relinquishes his room at the time of check out, when he has not paid for another night, and the key has been returned. See Miller, 77 Ohio St.3d at 312-13, 602 N.E.2d at 301. The state conceded, at the second suppression hearing, that appellant was a registered guest at the Highlander Motel, in Room Seventeen, for the evening of February 12 through the morning of February 13, 1999. The testimony of the state's witnesses indicates that appellant's room key was still in the room after his arrest. Hence, the record does not support the state's argument that appellant voluntarily abandoned his motel room. Therefore, we find the state could not lawfully search the motel room without first obtaining a search warrant.
We must next determine whether the state established probable cause for the issuance of this search warrant. The trial judge also issued the search warrants for both Room Seventeen and the Walker address on February 13, 1999. As we recently noted in State v. Taylor (June 2, 1999), Ross App. No. 98CA2451, unreported, when deciding whether to issue a search warrant, the issuing judge must scrutinize the affidavit submitted in support of the warrant. The judge's task is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit * * *, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Emphasis added.) State v. George (1989), 45 Ohio St.3d 325,544 N.E.2d 640, at paragraph one of the syllabus, quoting Illinois v.Gates (1983), 462 U.S. 213, 238-39, 103 S.Ct. 2317, 2332.
Hence, given the totality of the circumstances, "only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." George, 45 Ohio St.3d at 329, 544 N.E.2d at 644. As a reviewing court, we do not conduct a de novo review of the judge's decision to issue a search warrant. Instead, we accord great deference to the judge's determination of the existence of probable cause. George,supra, at paragraph two of the syllabus.
Appellant directs us to paragraph nine of the affidavit submitted by Investigator Gura in support of the application for the search warrant. Paragraph nine relates Investigator Gura's belief that appellant was en route to the Walker address to retrieve the purchased LSD when he was apprehended. Appellant argues that since this statement indicates that Investigator Gura believed that appellant kept his LSD at the Walker address, the state failed to establish probable cause for a search of Room Seventeen for LSD. We disagree.
A copy of Investigator Gura's affidavit is part of the record. As the trial court noted in its denial of appellant's initial motion to suppress, this affidavit established a detailed description of the informant's dealings with appellant. The informant described his supplier as a man named Jack who lives in Athens at the Walker address. The informant provided an Athens telephone number, which Athens police verified as the telephone number at the Walker address. The affidavit detailed a pattern of drug trafficking over a number of months, normally resulting in the informant's purchase of one thousand unit doses of LSD at the Walker address on each occasion.
The affidavit relates that on February 12, 1999, the informant and an undercover agent — Agent Hawks — contacted appellant by telephone at the Walker address; at which time appellant directed them to Room Seventeen of the Highlander Motel. Confirming the informant's story, Agent Hawks met appellant at Room Seventeen of this motel. Appellant offered to sell one thousand unit doses of LSD to Agent Hawks for $2,100.[2] Thus, based on the informant's pattern of prior dealings with appellant, the trial court concluded that the police had a reasonable belief that evidence of drug trafficking might be found in the motel room.
Paragraph nine of the affidavit does propose the theory that appellant intended to retrieve the LSD from the Walker address and return to Room Seventeen to complete the transaction. However, the same paragraph also advances a second theory, that appellant intended to abscond with the purchase money, without returning to deliver the drugs; hence, the decision of the police to apprehend appellant shortly after he left this meeting at the motel.
We note that the affidavit alleges that there may be evidence of aggravated trafficking in drugs, in violation of R.C. 2925.03, in the motel room. R.C. 2925.03(A) simply states that "no person shall knowingly sell or offer to sell a controlled substance." The affidavit established that there had been an exchange of money for the promised delivery of LSD. "A person can `offer to sell a controlled substance' in violation of [R.C. 2925.03(A)] without transferring a controlled substance to the buyer." State v. Scott (1982), 69 Ohio St.2d 439, 432 N.E.2d 798, syllabus.
The events described in Investigator Gura's affidavit establish more than a mere probability that drug trafficking had occurred in Room Seventeen. Viewing the affidavit in its totality, we find the judge's conclusion, that a search of Room Seventeen would produce evidence of drug trafficking, to be entirely reasonable. We find, therefore, that sufficient probable cause existed to support the issuance of a search warrant for Room Seventeen.
Accordingly, we OVERRULE appellant's First Assignment of Error.
 II.
Subsequent to the first suppression hearing, the prosecution learned that the police discovered the book of LSD, concealed in the lamp base, prior to the issuance of a warrant by the judge permitting the search of appellant's motel room. Appellant filed a supplemental motion to suppress the LSD, arguing this new information required suppression of the evidence under the exclusionary rule.
The exclusionary rule "commands that where evidence has been obtained in violation of the search and seizure protections guaranteed by the U.S. Constitution, the illegally obtained evidence cannot be used at the trial of the defendant." Kettering v. Hollen (1980), 64 Ohio St.2d 232,234, 416 N.E.2d 598, 600. The state argued that the LSD discovered in Room Seventeen on the evening of February 12, would have been "inevitably discovered" during the course of the lawful search of that room conducted in the early morning hours of February 13, 1999. Therefore, the state concluded, this evidence is admissible under the inevitable-discovery exception to the exclusionary rule. See State v. Perkins (1985),18 Ohio St.3d 193, 480 N.E.2d 763, syllabus (adopting the rule set forth in Nix v. Williams (1984), 467 U.S. 431, 104 S.Ct. 2501). The burden is on the state to show, with reasonable probability, that police officials would have discovered this evidence apart from the unlawful conduct. SeePerkins, 18 Ohio St.3d at 196, 480 N.E.2d at 767.
The trial court denied appellant's supplemental motion to suppress, allowing the introduction of the LSD into evidence at trial. Appellant, in his Second Assignment of Error, argues this decision was in error because the trial court improperly applied the inevitable-discovery rule to admit this evidence.
The exclusionary rule bars admission of evidence which is the direct result of a constitutional violation, as well as the admission of evidence which is the indirect result of such a violation. See Wong Sunv. United States (1963), 371 U.S. 471, 83 S.Ct. 407. Appellant argues that the inevitable-discovery rule applies only to this so-called derivative evidence, or fruit of the poisonous tree, as described in WongSun. See Segura v. United States (1984), 468 U.S. 796, 104 S.Ct. 3380.
Appellant concedes that evidence obtained pursuant to an independent source unrelated to the constitutional violation is admissible; appellant cites to Murray v. United States (1988), 487 U.S. 533, 108 S.Ct. 2529. InMurray, the United States Supreme Court determined that contraband initially observed during a prior illegal search is not subject to exclusion when it is subsequently seized under a valid warrant based upon wholly independent information. Appellant argues that the inevitable-discovery rule, as a variation of the independent-source exception to the exclusionary rule, applies only to derivative, and not direct, evidence.
Appellant further argues that the testimony of the officers at the second suppression hearing established that the police did not expect to find any drugs at the motel room. Appellant concludes that the police based their application for a search warrant for the motel room upon the discovery of the LSD resulting from the warrantless search of Room Seventeen. The LSD was, therefore, direct, not derivative, evidence. Hence, appellant concludes the trial court was in error to permit the admission of evidence obtained as a result of this constitutional violation.
Appellate review of a decision of a trial court on a motion to suppress evidence presents mixed questions of law and fact. See State v. McNamara
(1997) 24 Ohio App.3d 706, 710, 707 N.E.2d 539, 541. "When considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses." State v. Clary (Sept. 30, 1996), Lawrence App. No. 96CA7, unreported, citing State v. Mills
(1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972, 982. Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. See State v. Guysinger
(1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726, 727. However, the appellate court must determine, de novo, whether the trial court's conclusions of law, based on those findings of fact, are correct. SeeState v. Klein (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141, 1143.
The purpose of the inevitable discovery exception is to prevent the setting aside of criminal convictions that would have been obtained without police misconduct. If the state does demonstrate, by a preponderance of the evidence, that the evidence would have been discovered by lawful means, the deterrence of police misconduct has such little basis that the evidence should be allowed.
State v. Pearson (1997), 119 Ohio App.3d 745, 754, 696 N.E.2d 273,278, citing Nix, 467 U.S. at 443-44, 104 S.Ct. at 2508-09.
The testimony of the police officers at the second suppression hearing is somewhat contradictory. As is readily apparent from our inescapably lengthy Statement of the Case and Facts, there were a number of officers in and out of Room Seventeen that evening. Consequently, it is difficult to determine precisely who was where at any given moment. Nevertheless, we are convinced of the following facts.
Investigator Gura returned to the station prior to the discovery of the LSD in the lamp. However, Lieutenant Crabtree, Agent Lowe, and Detective Bainter returned to the station after the initial discovery of the LSD in the lamp, but prior to Investigator Gura's completion of the search warrant application and attendant affidavit. Lieutenant Crabtree and Agent Lowe both testified that they did not inform Investigator Gura of LSD in the lamp. However, Agent Lowe and Detective Bainter, who actually discovered the LSD, did assist Investigator Gura in the preparation of his affidavit.
As we discussed above, the affidavit in support of the search warrant does contain sufficient operative facts to establish the probability that a search of Room Seventeen would produce evidence of the crime of drug trafficking. The affidavit refers to the specific violation of R.C. 2925.03
as "trafficking in LSD," and seeks a warrant to search for evidence of the same, including, of course, LSD, or any other controlled substances, as well as, in general, for books, records, papers, tax documents, U.S. currency, deadly weapons or firearms that may have been used in the course of the drug-trafficking activity. The affidavit does not refer to any specific location in the room where LSD might be found, nor does the affidavit describe the form or quantity of LSD that might be found.
For evidence to be admitted under the inevitable-discovery exception to the exclusionary rule, the state must demonstrate: (1) a reasonable probability that the evidence would have been discovered by lawful means but for the police misconduct; (2) that the police possessed the leads making the discovery inevitable at the time of the misconduct; and (3) that the police were actively pursuing an alternate line of investigation prior to the misconduct. See State v. Wilson (1994), 97 Ohio App.3d 333,646 N.E.2d 863, citing United States v. Buchanan (C.A.6, 1990),904 F.2d 349, and United States v. Webb (C.A.5, 1986), 796 F.2d 60.
We have already concluded that the police established the requisite probable cause for the issuance of a warrant to search Room Seventeen. At the second suppression hearing, Investigator Gura and Agent Hawks testified to their years of experience as police officers and their experience in conducting room searches. Investigator Gura testified that, after the LSD from inside the table lamp was removed, he conducted a thorough search of the remainder of the motel room, including the closet and bathroom, searching under the beds, under drawers, and behind picture frames. Given the thoroughness of the room search, there was the reasonable probability that the book of LSD would have been discovered incident to this lawful search, thereby satisfying the first prong of this test.
Agent Lowe heard the radio transmission of the drug-buy from Agent Hawks' concealed transmitter. He also had the opportunity to interview the informant after appellant had fled the scene. Detective Bainter was familiar with the information supplied by the informant and also heard the radio transmission. Both Agent Lowe and Detective Bainter assisted Investigator Gura in the preparation of the affidavit supporting the search-warrant application. This information consisted of the pattern of drug trafficking by appellant alleged by the informant; the offer by appellant to sell one thousand units of LSD to undercover Agent Hawks; as well as the cash transfer from Agent Hawks to appellant. This information was clearly sufficient to establish probable cause of illegal activity in Room Seventeen of the Highlander Motel, independent of the discovery of the LSD at the motel. Hence, the second prong of this test, the possession of leads independent of the evidence improperly acquired, is clearly satisfied.
In Buchanan, supra, the Sixth Circuit Court of Appeals rejected the government's argument for application of the inevitable discovery exception. In Buchanan, drug-enforcement agents believed a Michigan farm was being used to distribute large quantities of marijuana. Agents arrested one of the residents, the defendant, some distance from the farm; they found a quantity of marijuana in his vehicle. Upon returning to the subject farm, the agents forced their way into the Buchanan residence where they found large quantities of marijuana.
In rejecting the government's argument that the contraband would have been inevitably discovered had the agents obtained a search warrant, the court noted that the agents were not pursuing an "alternate line of investigation" of Buchanan. The court went on to note that the agents were sent to observe the Buchanan residence in order to develop probable cause for a search warrant. If they developed probable cause, it was only through interrogation of Buchanan himself. However, prior to initiating the warrant application for the Buchanan residence, the agents made an illegal entry into the home which "tainted the only * * * investigation that was ongoing." Buchanan, 904 F.2d 349, 357, citing United States v.Owens (C.A. 10, 1986), 782 F.2d 146, 152.
In Wilson, supra, the police received an anonymous tip that a tall man, wearing an eye patch, and driving a car with Florida plates, was transporting marijuana from Florida and would be stopping at a Warren County residence. Spotting the defendant, who matched this description, the police stopped his car and searched the vehicle, discovering a quantity of marijuana. Defendant moved to suppress the evidence based on a lack of probable cause for the search. The state argued the inevitable-discovery exception to the exclusionary rule, submitting that a K-9 unit, trained in drug discovery — brought to the scene but never used — would have discovered the drugs. The trial court adopted the state's position.
The Twelfth District Court of Appeals held, however, that the police lacked probable cause for the arrest of the defendant. The court also held that the police failed to satisfy the third prong of the Buchanan
test because they were not pursuing an independent line of investigation in the case. Even assuming confirmation of the anonymous tip by the K-9 unit, the illegal arrest tainted the investigation. The court found, therefore, that the inevitable-discovery exception did not apply to this warrantless search.
In the case sub judice, however, it is clear that the police were actively pursuing an alternative line of investigation, prior to the pre-warrant discovery of the LSD. As we stated above, it is not necessary to establish that a defendant can actually deliver a controlled substance to support a conviction for drug trafficking. In State v. Henton (1997),21 Ohio App.3d 501, 700 N.E.2d 371, the defendant offered to sell an undercover agent three rocks of cocaine for $50. The agent agreed and exchanged the money for a bag that did not contain cocaine, but rather three peanuts. Nevertheless, the Eleventh District Court of Appeals held that the jury could have reasonably concluded from the testimony submitted at trial that the defendant intended to sell a controlled substance.
Agent Hawks testified that he decided to allow appellant to leave the motel room without physically delivering the LSD because he believed that he had obtained enough evidence to support the drug-trafficking charge. He called for an arrest because he was concerned that appellant might abscond with the purchase money and not return with the LSD.
At the time appellant left the motel room, the police believed, with good reason, that they had sufficient evidence to support a charge of drug trafficking against appellant. Applying the third prong of the test set forth in the Wilson and Buchanan line of cases, the police had already completed their "alternative line of investigation" at the time appellant left Room Seventeen.
We also note that Lieutenant Crabtree testified that he instructed Investigator Gura to prepare affidavits in support of a search-warrant application not only for the Walker address, but for Room Seventeen as well. Both Lieutenant Crabtree and Investigator Gura testified that this conversation took place in Lieutenant Crabtree's car, while it was parked on Blick Avenue; Lieutenant Crabtree also testified that this conversation occurred before he entered Room Seventeen. It was not until Lieutenant Crabtree reached Room Seventeen, and related his story of a successful search of the same room several years earlier, that Detective Bainter discovered the book of LSD in the lamp.
The police had already completed their drug-trafficking investigation prior to the discovery of the LSD. They had Agent Hawks' evidence of appellant's offer to sell a controlled substance and appellant's acceptance of Agent Hawk's $2,100 advance toward the purchase. Hence, the police had established sufficient evidence to support a finding of probable cause for the search of Room Seventeen independent of the chance discovery of the concealed LSD in the room. Accordingly, the third prong of the Wilson-Buchanan test was satisfied.
We hold, therefore, that the trial court correctly ruled that the police would have inevitably, and legally, discovered this contraband upon the execution of the search warrant for Room Seventeen. Therefore, the trial court properly denied appellant's supplemental motion to suppress this evidence.
Accordingly, we OVERRULE appellant's Second Assignment of Error and AFFIRM the judgment of the trial court.
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Court of Common Pleas to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. The stay as herein continued will terminate in any event at the expiration of the sixty-day period.
The stay shall terminate earlier if the appellant fails to file a notice of appeal with the Supreme Court of Ohio in the forty-five-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
David T. Evans, Judge.
Abele, P.J. Concurs in Judgment and Opinion.
Harsha, J. Concurs in Judgment Only.
[1] LSD is a controlled substance listed in Schedule I of R.C.3719.41(C)(18).
[2] Police testimony indicated that in the usage of the drug trade, nine hundred unit-doses of LSD in liquid, gel-cap form are considered equivalent to one thousand unit-doses in paper form.