[Cite as *State v. Grose*, 2013-Ohio-4387.]

COURT OF APPEALS
RICHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. Sheila G. Farmer, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 12CA109 |
| | : | |
| ALLANDO BAKARI GROSE | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Appeal from the Richland County Court
of Common Pleas, Case No. 2012 CR
0049 H

JUDGMENT:                                   AFFIRMED IN PART, REVERSED IN
PART, AND REMANDED

DATE OF JUDGMENT ENTRY:          September 27, 2013

APPEARANCES:

For Plaintiff-Appellee:                       For Defendant-Appellant:

JAMES J. MAYER, JR.                        ROBERT GOLDBERGER
RICHLAND CO. PROSECUTOR              10 West Newlon Place
JOHN C. NIEFT                                  Mansfield, OH 44902
38 South Park St.
Mansfield, OH 44902

*Delaney, J.*

{¶1}   Appellant Allando Bakari Grose appeals from the judgment entries of the Richland County Court of Common Pleas overruling his motion to suppress, and convicting and sentencing him upon a number of criminal offenses.   Appellee is the state of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2}   The following evidence is adduced from the testimony of a single officer called by appellee at the hearing on appellant's motions to suppress.

*Testimony at the Suppression Hearing*

{¶3}   This case arose on January 1, 2012, around 8:18 a.m. when Officer Allen Edwards of the Mansfield Police Department responded to a residence on Blymyer Avenue regarding an assault.   He met the victim of the assault, Cory Patton, on the sidewalk in front of the residence.

{¶4}   Patton explained the residence belonged to his cousin and Patton was there for a New Year's Eve party the night before.   In the early morning hours, he was assaulted by someone else at the party: appellant.   Patton said he was punched, kicked, put on the floor, robbed, held down, and burned.   Patton told Edwards he was afraid and didn't move; he didn't try to get away because he was threatened.   He also said the assault was filmed by a woman with a black Droid cell phone and appellant was still inside the house, asleep on a couch.   Patton explained he crawled out a bedroom window that morning and called police.

{¶5}   Patton went back inside the house through the window and unlocked the front door for Edwards.   Edwards entered the foyer and directly on his right was an end

table and couch; asleep on the couch were appellant and a woman, 10 to 15 feet from the front door. Edwards and another officer immediately made contact with appellant and the woman, detaining them both and advising a complaint had been made and they would be brought to the police department for questioning.

{¶6} A black Droid cell phone was on the coffee table directly above the couple's heads; Edwards seized it because he was "originally told it belonged to [appellant]." The phone was placed on a table outside the interview rooms as each subject was interviewed. Both parties denied ownership of the phone. Edwards returned to the Blymyer residence to find out whom the phone belonged to, but no one would open the door. He tagged the phone as evidence.

{¶7} Although Edwards never personally reviewed its contents, he testified a search warrant was subsequently obtained for the contents of the black Droid cell phone.

*Criminal Charges and Motion for Bond Review*

{¶8} Appellant was first charged in municipal court by criminal complaint with one count of robbery, a felony of the second degree. Appellant waived his preliminary hearing scheduled for January 12, 2012.

{¶9} On February 3, 2012, appellant filed a Motion for Bond Review asking the trial court to reduce his bond, stating in pertinent part, "his bond was established in the municipal court in Case No. 2012-CRA-00136 as being $50,000 cash and personal recognizance and no contact with the victim or victim's family. [Appellant] asks the court to lower his bond so that he can get out of the Richland County Jail, where he is

being held solely on the pending charge, for the following reason: [employment and to enroll in college]."

{¶10} On February 10, 2012, appellant was charged by indictment with one count of kidnapping [R.C. 2905.01(A)(3), F1], one count of abduction [R.C. 2905.02(A)(2), F3], one count of extortion [2905.11(A), F3], one count of aggravated robbery [R.C. 2911.01(A)(3), F1], one count of robbery [R.C. 2911.02(A)(2), F2], and one count of tampering with evidence [R.C. 2921.12(A)(1), F3].

{¶11} On February 23, 2012, a bond review hearing was held before a magistrate per appellant's motion of February 3 and a written decision was journalized on February 24, 2012. The decision noted appellee called two witnesses, Officer Edwards and a detective, and two exhibits were admitted without objection. The magistrate made the following findings of fact which are relevant to this appeal:

> 1. * * *. [Appellant's] bond is currently set in the amount of $50,000 cash and personal recognizance, the court's electronic monitoring program and that he have no contact with the victim or the victim's family.
>
> 2. The alleged facts are summarized as follows: On January 1, 2012 [appellant] and Corie Patton were at the 125 Blymyer Avenue residence of Doug Windsor and Chelsea Smith. Chelsea Smith was present when [appellant] assaulted and robbed Mr. Patton. A cell phone video captured the entire incident—over 15 minutes and 20 seconds in length. Seventeen year old [T.S.] operated the cell phone. The cell phone video shows [appellant] slapping Mr. Patton

in the back of his head, taking off Mr. Patton's earring and ring, stripping him of his clothing, setting his shirt on fire and rubbing it on Mr. Patton's back, sticking his finger onto the back of the victim's head, going through his pants, sitting on his lower back spread-eagled, putting a lighter on his back, shoulder and arm and choking and strangling him. [T.S.] asked to quit recording the video and [appellant] told her to keep it going. [Appellant] kept taunting Mr. Patton, telling him "Where's my money, bro?" "Why you robbing people, bro?" "Who will you rob next, bro?" etc.

3. [Appellant] is a 20 year old male. He has prior convictions for felonious assault (2006), intimidation of an attorney, victim, or witness (2007), receiving stolen property (2007), misdemeanor assault (2009), resisting arrest (2010) and disorderly conduct and underage consumption (2011). Before he went to jail he was employed by Gabriel Brothers and the Mountain Drive Thru. He has been in custody since January 7, 2012. [Appellant] gave a taped statement denying all of these acts.

4. Defense counsel made no specific bond request. [Appellee] requested [appellant's] bond be increased.

* * * *.

{¶12} The magistrate concluded appellant's bond should be raised to $250,000 cash and personal recognizance, plus electronically monitored house arrest and no

contact with the victim, witnesses, or their families. On March 19, 2012, the trial court adopted the magistrate's decision by judgment entry.

{¶13} A jury trial was scheduled for April 9, 2012. On that date, the trial court journalized an "Order of Trial Continuance" stating "It is hereby ordered that the jury trial of this case is continued from April 9, 2012 because the case of *Carol S. Miller v. Dana H. Andrews, Case No. 10-CV-116* proceeded to trial. Time is tolled for speedy trial purposes until this matter can be tried."

{¶14} On April 30, 2012, appellant filed a Motion to Dismiss arguing his right to a speedy trial was violated by the trial court's continuance. Defense trial counsel also filed a Motion to Withdraw accompanied by an affidavit by appellant acknowledging any resulting delay would be chargeable against appellant. Appellee responded on May 1, 2012. On May 11, 2012, parties argued the motions before the trial court. On May 14, 2012, by judgment entry, the trial court permitted defense trial counsel (Attorney David Homer) to withdraw and appointed new trial counsel (Attorney Roeliff Harper). On May 21, 2012, the trial court issued a Judgment Entry Overruling Defendant's Motion to Dismiss.

{¶15} On June 7, 2012, appellant filed a Motion to Suppress Video Recording on Cell Phone and a separate Motion to Suppress for Illegal Search and Seizure. Appellee responded with motions in opposition. A suppression hearing was held on July 31, 2012 and the suppression motions were overruled on October 3, 2012.

{¶16} On October 8, 2012, appellant entered pleas of no contest to Count I, kidnapping, Count III, extortion, Count IV, aggravated robbery, and Count VI, tampering

with evidence. Appellee dismissed Count II, abduction, and Count V, robbery. The trial court sentenced appellant to an aggregate prison term of 12 years.

{¶17} Appellant now appeals from the judgment entry overruling the motion to suppress and the judgment entry of conviction and sentence.

{¶18} Appellant raises four assignments of error:

**ASSIGNMENTS OF ERROR**

{¶19} "I. THE COURT ERRED IN OVERRULING THE MOTION TO DISMISS BECAUSE THE APPELLANT WAS NOT TRIED WITHIN THE TIME LIMITS MANDATED BY REVISED CODE SECTIONS 2945.71, 2945.72, AND 2945.73."

{¶20} "II. THE COURT ERRED IN OVERRULING THE MOTION TO SUPPRESS EVIDENCE OBTAINED BY THE SEARCH OF THE PREMISES OCCUPIED BY APPELLANT ON JANUARY 1, 2012, IN VIOLATION OF APPELLANT'S FOURTH AMENDMENT RIGHTS AGAINST ILLEGAL SEARCHES OR SEIZURES."

{¶21} "III. THE COURT ERRED IN CONVICTING APPELLANT TO (*sic)* ALLIED OFFENSES OF SIMILAR IMPORT IN VIOLATION OF THE CONSTITUTIONAL RIGHT AGAINST DOUBLE JEOPARDY."

{¶22} "IV. THE COURT ERRED IN FAILING TO HOLD A HEARING ON WHETHER IT WAS SENTENCING APPELLANT TO MULTIPLE SENTENCES FOR ALLIED OFFENSES OF SIMILAR IMPORT."

**ANALYSIS**

I.

{¶23} In his first assignment of error, appellant argues the trial court violated his right to a speedy trial.  We disagree.

{¶24} Speedy trial provisions are mandatory and are encompassed within the Sixth Amendment to the United States Constitution. The availability of a speedy trial to a person accused of a crime is a fundamental right made obligatory on the states through the Fourteenth Amendment. *State v. Ladd*, 56 Ohio St.2d 197, 383 N.E.2d 579 (1978); *State v. Pachay*, 64 Ohio St.2d 218, 416 N.E.2d 589 (1980).

{¶25} Our review of the trial court's decision regarding a motion to dismiss based upon a violation of the speedy trial provisions involves a mixed question of law and fact. *State v. Larkin*, 5th Dist. Richland No. 2004-CA-103, 2005-Ohio-3122, ¶ 11. Due deference must be given to the trial court's findings of fact if supported by competent, credible evidence. Id. However, we must independently review whether the trial court properly applied the law to the facts of the case. Id. Furthermore, when reviewing the legal issues presented in a speedy trial claim, an appellate court must strictly construe the relevant statutes against the state. *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 1996-Ohio-171, 661 N.E.2d 706.

{¶26} A person charged with a felony must be brought to trial within 270 days unless they waived that right to a speedy trial. If a person is held in jail in lieu of bond, then each day that the suspect is in custody counts as three days. R.C. 2945.71(E). This "triple count" provision is applied only when the defendant is being held in jail solely on the pending charge. *State v. MacDonald*, 48 Ohio St.2d 66, 357 N.E.2d 40

(1976), paragraph one of the syllabus. Pursuant to R.C. 2945.73, a person who is not brought to trial within the proscribed time periods found in R.C. 2945.71 and R.C. 2945.72 "shall be discharged" and further criminal proceedings based on the same conduct are barred.

{¶27} "When reviewing a speedy-trial issue, an appellate court must calculate the number of days chargeable to either party and determine whether the appellant was properly brought to trial within the time limits set forth in R.C. 2945.71." *State v. Riley*, 162 Ohio App.3d 730, 2005–Ohio–4337, 834 N.E.2d 887, ¶ 19 (12th Dist.).

{¶28} Appellant was arrested on January 1, 2012 and argues his try-by date was March 30, 2012; appellee responds the motion for bond review filed by appellant on February 3, 2012 tolled the speedy time calculation for 21 days. Appellant's first trial date was April 9, 2012. For the following reasons, we find the trial date of April 9, 2012 was within speedy-trial time.

{¶29} In *State v. Rouse*, we held a defendant's motion for bond reduction did in fact toll the speedy trial time while the motion was pending. 5th Dist. Tuscarawas No. 2007 AP 12 0078, 2008-Ohio-5891, ¶ 22, appeal not allowed, 121 Ohio St.3d 1440, 2009-Ohio-1638, 903 N.E.2d 1223. Both parties acknowledge *Rouse*, but appellant asks us to instead follow the rationale of the Second District Court of Appeals in *State v. Hardy*, 2nd Dist. Greene No. 2012 CA 20, 2012-Ohio-3498, in which the Court found a motion for bond reduction did not toll the time to bring the accused to trial. We find *Hardy* to be distinguishable from the case sub judice. As appellee points out, the Second District found the motion for bond reduction did not interfere with speedy trial time, in part, because no hearing was held, the state didn't bother to respond to the

motion, and the trial court filed a brief, standardized entry; therefore, it was reasonable to conclude the motion for bond review had not burdened the trial court to any degree and could not be said to have delayed trial. Id., 2012-Ohio-3498 at ¶ 20. We note that *Hardy* was a case of criminal non-support. In the case sub judice, however, the bond issue involved significant allegations of violence against the victim, necessitating a hearing and the taking of evidence. The magistrate's entry includes findings of fact and conclusions of law. The facts are distinguishable in *Hardy* and we therefore follow our precedent in *Rouse*, supra.

{¶30} We find, therefore, the trial date of April 9 was properly within time because the speedy trial time was tolled during the time in which appellant's motion for bond review was pending. Further, the trial court properly continued the April 9 trial date *sua sponte*.

{¶31} Courts may sua sponte continue a trial beyond the statutory speedy-trial limit, but only when reasonable and only when the continuances are made by journal entry prior to the expiration of the time limit. *State v. King*, 70 Ohio St.3d 158, 162, 1994-Ohio-412, 637 N.E.2d 903. A continuance must be reasonable in both purpose and length. *State v. Martin*, 56 Ohio St.2d 289, 293, 384 N.E.2d 239 (1978). The trial court's continuance due to an ongoing civil trial, as noted in its journal entry, is reasonable pursuant to R.C. 2945.72(H). *State v. Foster*, 5th Dist. Richland No. 07CA31, 2007-Ohio-6626, ¶18.

{¶32} Moreover, we note appellant has not made any showing of presumptive prejudice. When determining whether an accused was denied the right to a speedy trial as guaranteed by the Sixth Amendment, the court must consider four factors: (1)

length of delay, (2) reason for the delay, (3) the accused's assertion of his right, and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972); *State v. Davis*, 46 Ohio St.2d 444, 446, 349 N.E.2d 315 (1976). No one factor is controlling. Rather, the court must balance these factors under a totality of the circumstances framework. *Barker* at 533. The first of the Barker factors, the length of delay, "is to some extent a triggering mechanism." Id. at 530. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." Id. If the defendant makes the initial threshold showing of presumptive prejudice, we must then consider the length of the delay with the other *Barker* factors. *Doggett v. United States*, 505 U.S. 647, 652, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992), citing *Barker* at 553–534. In this case, we have only summary allegations of prejudice.

{¶33} For the foregoing reasons, we find appellant's right to a speedy trial was not violated and his first assignment of error is therefore overruled.

II.

{¶34} In his second assignment of error, appellant argues the trial court erred in overruling his motion to suppress. We disagree.

{¶35} Appellate review of a trial court's decision to deny a motion to suppress involves a mixed question of law and fact. *State v. Long*, 127 Ohio App.3d 328, 332, 713 N.E.2d 1 (4th Dist.1998). During a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. *State v. Brooks*, 75 Ohio St.3d 148, 154, 661 N.E.2d 1030 (1996). A reviewing court is bound to accept the trial court's findings of

fact if they are supported by competent, credible evidence. *State v. Medcalf*, 111 Ohio App.3d 142, 145, 675 N.E.2d 1268 (4th Dist.1996). Accepting these facts as true, the appellate court must independently determine as a matter of law, without deference to the trial court's conclusion, whether the trial court's decision meets the applicable legal standard. *State v. Williams*, 86 Ohio App.3d 37, 42, 619 N.E.2d 1141 (4th Dist.1993), overruled on other grounds.

{¶36} There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's finding of fact. In reviewing a challenge of this nature, an appellate court must determine whether the trial court's findings of fact are against the manifest weight of the evidence. See, *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See*, Williams*, supra. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96,620 N.E.2d 906 (8th Dist.1994).

{¶37} Appellant challenges the trial court's decision overruling his motion to suppress the seizure of the black Android cell phone containing the video of appellant beating the victim, arguing that Patton, as an "overnight guest," did not have authority

to allow officers into the house. The threshold question, however, is whether appellant had a reasonable expectation of privacy.

{¶38} The Fourth Amendment to the United States Constitution prohibits warrantless searches and seizures, rendering them per se unreasonable unless an exception applies. *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507 19 L.Ed.2d 576 (1967). In determining whether the Fourth Amendment protects against a search, "the rule that has emerged * * * is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.'" *Katz,* 389 U.S. at 361 (Harlan, J., concurring). See *Rakas v. Illinois*, 439 U.S. 128, 143–144, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978); *State v. Williams*, 73 Ohio St.3d 153, 166–167, 652 N.E.2d 721(1995).

{¶39} Fourth Amendment rights are personal rights that may not be vicariously asserted. *Rakas v. Illinois*, 439 U.S. 128, 133–134, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). "A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed." (Emphasis sic.) Id. at 134. The exclusionary rule is "an attempt to effectuate the guarantees of the Fourth Amendment," and only defendants whose Fourth Amendment rights have been violated may benefit from its protections. (Emphasis sic.) Id. Standing to claim the protection of the Fourth Amendment depends on whether the person involved has a legitimate expectation of privacy. A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as reasonable. *Minnesota v. Olson*, 495

U.S. 91, 95–96, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990); *State v. Williams*, 73 Ohio St.3d 153, 166, 652 N.E.2d 721 (1995).

{¶40} Appellant has overlooked his burden to establish his status at the Blymyer residence.  The defendant bears the burden to prove that he had a reasonable expectation of privacy in the searched area. *Rakas* at 131; *Williams* at 166.  In this case, however, appellant has not established his standing to assert any violation of his Fourth Amendment rights.  Both parties have, at various times, referred to both Patton and appellant as "overnight guests" in their arguments, but in fact there is no evidence in the record to demonstrate to us appellant met his burden of proving he had a reasonable expectation of privacy in the Blymyer residence.

{¶41} An overnight guest in a home has an expectation of privacy that society is prepared to recognize as reasonable. *Olson* at 98; *Williams* at 166. But in *Minnesota v. Carter*, 525 U.S. 83, 90, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), the United State Supreme Court further stated that "an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."

{¶42} Only one witness testified at the suppression hearing: Officer Edwards. His testimony regarding appellant's presence at the house was that he was told appellant came to the New Year's Eve party, assaulted Patton in the early morning hours, and at some point fell asleep on the couch.  We find from this limited evidence appellant was not at the Blymyer residence as an "overnight guest" as contemplated by *Olson*.  As the Second District Court of Appeals succinctly stated in a similar case, "The fact that he may have 'passed out' on the floor or couch following these activities

does not change his status to an overnight guest." *State v. Glover*, 2nd Dist. Montgomery No. 20692, 2005-Ohio-4509, ¶ 14; see, *State v. Brown*, 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720; *State v. Gulley*, 5th Dist. Stark No. 2006CA00114, 2008-Ohio-887.

{¶43} For the foregoing reasons, we find the trial court properly overruled appellant's motions to suppress and appellant's second assignment of error is overruled.

### III, IV.

{¶44} In his third and fourth assignments of error, appellant argues the offenses of kidnapping and aggravated robbery should have merged for purposes of sentencing, or, alternatively, the extortion and aggravated robbery offenses should have merged, and the trial court should have held an allied-offenses hearing. We agree in part and therefore sustain appellant's third assignment of error.

{¶45} R.C. 2941.25 states as follows:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.
>
> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a

separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

{¶46} In *State v. Johnson*, the Ohio Supreme Court modified the test for determining whether offenses are allied offenses of similar import. 128 Ohio St.3d 1405, 2010–Ohio–6314. The Court directed us to look at the elements of the offenses in question and determine whether or not it is possible to commit one offense and commit the other with the same conduct. If the answer to such question is in the affirmative, the court must then determine whether or not the offenses were committed by the same conduct. If the answer to the above two questions is yes, then the offenses are allied offenses of similar import and will be merged. If, however, the court determines that commission of one offense will never result in the commission of the other, or if there is a separate animus for each offense, then the offenses will not merge according to *Johnson*, supra.

{¶47} Appellant did not object to the trial court's imposition of multiple sentences and has therefore waived all but plain error. Under Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." The Ohio Supreme Court has expressly held that the imposition of multiple sentences for allied offenses of similar import is plain error. *State v. Underwood*, 124 Ohio St.3d 365, 2010–Ohio–1, 922 N.E.2d 923, ¶ 31; *State v. Yarbrough*, 104 Ohio St.3d 1, 2004–Ohio–6087, 817 N.E.2d 845, ¶ 96–102.

{¶48} Appellant was indicted upon, convicted of, and sentenced upon, e.g., one count of kidnapping pursuant to R.C. 2905.01(A)(3) and one count of aggravated

robbery pursuant to R.C. 2911.01(A)(3). The record is silent as to the facts underlying each separate offense; it is therefore impossible for us to determine whether these are allied offense of similar import. When the plea agreement is silent on the issue of allied offenses of similar import, the trial court is obligated under R.C. 2941.25 to determine whether the offenses are allied, and if they are, to convict the defendant of only one offense. *State v. Underwood,* 124 Ohio St.3d 365, 371, 2010-Ohio-1, 922 N.E.2d 923.

{¶49} Appellee urges us to look to facts elsewhere in the record, including the bond review hearing, but as the magistrate's ruling makes clear, those claims were still "allegations." We find there are insufficient facts in the record for this court to make an allied-offense determination in the instant case. In *Underwood*, the Supreme Court explained that the trial court's duty to merge allied offenses "is mandatory, not discretionary." *Underwood* at ¶ 26. The trial court should have inquired into the facts to determine whether any of the offenses were allied and failure to make the necessary inquiry constitutes plain error.

{¶50} Accordingly, we sustain appellant's third assignment of error and remand the case to the trial court for an allied-offense hearing and, if appropriate, allow appellee to elect which allied offenses to pursue at resentencing. *State v. Whitfield*, 124 Ohio St.3d 319, 2010–Ohio–2, 922 N.E.2d 182, paragraph one of the syllabus. In light of our decision on this assignment of error, appellant's argument regarding merger of the offense of extortion and aggravated robbery, and his fourth assignment of error regarding an allied-offenses hearing, are moot.

{¶51} Appellant's third assignment of error is therefore sustained and his fourth assignment of error is overruled.

**CONCLUSION**

{¶52} Appellant's first, second, and fourth assignments of error are overruled and his third assignment of error is sustained. The judgment of the Richland County Court of Common Pleas is affirmed in part, reversed in part, and remanded for an allied-offenses hearing in accord with this opinion.

By: Delaney, J. and

Farmer, P.J.

Wise, J., concur.


_____
HON. PATRICIA A. DELANEY


_____
HON. SHEILA G. FARMER


_____
HON. JOHN W. WISE